Case No. 26-10012

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

In the Matter of: Highland Capital Management, L.P.,

Debtor

The Dugaboy Investment Trust,

Appellant

v.

Highland Capital Management, L.P. and Highland Claimant Trust,

Appellees

Appeal from the United States District Court
Northern District of Texas
Hon. Jane J. Boyle
No. 3:25-cv-02579-B

# APPELLEES' BRIEF

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz
John A. Morris
Gregory V. Demo
Jordan A. Kroop
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
(310) 277-6910

HAYWARD PLLC
Melissa S. Hayward
(Texas Bar No. 24044908)
Zachery Z. Annable
(Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
(972) 755-7100

WILLKIE FARR & GALLAGHER LLP
Mark T. Stancil
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000

*Counsel for Appellees*

## FRAP 26.1 and 28(a)(1) DISCLOSURE

Appellee Highland Capital Management, L.P. is a limited partnership, the general partner of which is HCMLP GP LLC, a privately held limited liability company. Appellee Highland Claimant Trust is a privately held Delaware trust. No publicly held corporation owns 10% or more of the interests in any of these entities.

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**1. Appellees:**

Highland Capital Management, L.P. and Highland Claimant Trust

**2. Counsel for Appellees:**

Jeffrey N. Pomerantz
John A. Morris
Gregory V. Demo
Jordan A. Kroop
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067

Mark T. Stancil
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, D.C. 20006

Melissa S. Hayward
Zachery Z. Annable
Hayward PLLC
10501 N. Central Expy., Ste. 106
Dallas, Texas 75231

**3. Appellant:**

The Dugaboy Investment Trust

**4. Counsel for Appellant:**

Michael J. Edney
Morgan Lewis Bockius LLP
1111 Pennsylvania Ave. N.W.
Washington, DC 20004

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Ave., Suite 400
Austin, TX 78701

*/s/ Zachery Z. Annable*
Zachery Z. Annable

## TABLE OF CONTENTS

ISSUE PRESENTED ........................................................................ 1
STATEMENT REGARDING ORAL ARGUMENT ................................... 1
INTRODUCTION ........................................................................... 1
COUNTERSTATEMENT OF THE CASE ................................................ 7
SUMMARY OF ARGUMENT .............................................................. 13
ARGUMENT ................................................................................. 14

I. Dugaboy's "Reverse-Merger" Rule Would Work An Improper End-Run Around Settled Waiver And Timeliness Rules Governing Recusal Motions Under 28 U.S.C. § 455(a). .......... 14

II. Dugaboy's "Reverse-Merger" Rule Is Unprecedented And Unfounded. .......... 18

III. This Is A Particularly Poor Case In Which To Consider An Exception To Long-Settled Practice. .......... 24

CONCLUSION ............................................................................... 27

## TABLE OF AUTHORITIES

*Page(s)*

### CASES

*Acis Cap. Mgmt., L.P. v. James Dondero*,
2026 WL 2075573 (5th Cir. July 17, 2026) .............................. 14, 25

*Armour v. Knowles*,
512 F.3d 147 (5th Cir. 2007) .................................................. 21, 22

*ASARCO, Inc. v. Elliot Mgmt. (In re ASARCO, L.L.C.)*,
650 F.3d 593 (5th Cir. 2011) .......................................................... 23

*Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)*,
212 F.3d 282 (5th Cir. 2000) .......................................................... 23

*Charitable DAF Fund, LP v. Highland Cap. Mgmt., L.P.*,
98 F.4th 170 (5th Cir. 2024)......................................................... 5, 25

*In re Compl. of Jud. Misconduct Under The Jud. Improvements Act of 2002*,
No. 05-26-90044 (Jud. Council for the 5th Cir. Dec. 29, 2025) ... 8, 9

*Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*,
943 F.3d 239 (5th Cir. 2019) .......................................................... 22

*Dondero v. Highland Cap. Mgmt. L.P.*,
105 F.4th 830 (5th Cir. 2024)....................................................... 5, 25

*Dondero v. Jernigan*,
2025 WL 1122466 (5th Cir. Apr. 16, 2025) ............................ *passim*

*Elebute v. Vill. Cap. & Inv., L.L.C. (In re Elebute)*,
127 F.4th 958 (5th Cir. 2025)......................................................... 22

*Highland Cap. Mgmt., L.P. v. Dondero (In re Highland Cap. Mgmt., L.P.)*,
2021 WL 2326350 (Bankr. N.D. Tex. June 7, 2021) ........................ 5

*NexPoint Real Estate Partners, L.L.C. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, --- F.4th ----, 2026 WL 2357894 (5th Cir. Aug. 14, 2026)..... 5, 24, 25

*Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875 (5th Cir. 2014) .......... 19

*Osborne v. Belton*, 131 F.4th 262 (5th Cir. 2025).......... 21, 22

*Tax Ease Funding, L.P. v. Thompson (In re Kizzee-Jordan)*, 626 F.3d 239 (5th Cir. 2010) .......... 20, 21

*Travelers Ins. Co. v. Liljeberg Enters. Inc.*, 38 F.3d 1404 (5th Cir. 1994) .......... 4, 17

*United States v. York*, 888 F.2d 1050 (5th Cir. 1989) .......... 17, 18

**STATUTES AND RULE**

28 U.S.C. § 455(a) .......... *passim*

28 U.S.C. § 455(b) .......... 3, 15

28 U.S.C. § 455(e) .......... 3, 15, 16

Fed. R. Bankr. P. 8003(a)(4).......... 21

## ISSUE PRESENTED

Whether, as an exception to the universally recognized general rule that interlocutory orders merge into a *subsequent* final order, this Court should permit the "reverse merger" of an interlocutory order denying recusal into a *prior* final judgment that had previously been appealed, despite the fact that no court anywhere has recognized such an exception and numerous courts have (contrary to Appellant The Dugaboy Investment Trust's ("Dugaboy") gross mischaracterizations of the record) rejected Dugaboy's assertions that recusal was required.

## STATEMENT REGARDING ORAL ARGUMENT

Appellees Highland Capital Management, L.P. and Highland Claimant Trust (together, "Highland") respectfully submit that oral argument would not materially aid the Court's decision and would unnecessarily consume this Court's and Highland's resources. This Court is no doubt already familiar with Dugaboy's prior efforts to recuse Chief Judge Jernigan, having rejected three earlier attempts.

## INTRODUCTION

Dugaboy cannot cite a single case—in this Circuit or any other—in which an interlocutory recusal order has been "reverse merged" into a *prior* final order already on appeal. Dugaboy nonetheless claims that this appeal

"presents a remarkable set of circumstances" (Dugaboy's Opening Brief ("Br."; Dkt. No. 64-1) at 6) that warrant jettisoning decades of settled law and practice. To the contrary, this case illustrates why such an exception would serve only to allow Dugaboy—and its driving principal, James Dondero[1]—to impose further serious harm on the judges, parties, and professionals who have been working for years to conclude this bankruptcy saga. Even Odysseus' journey ended eventually.[2]

For starters, Dugaboy's brief rests on a fundamental contradiction: It claims that "recusal is non-waivable, much like subject matter jurisdiction" (Br. at 24), yet this entire appeal begs for a special "reverse merger" rule so that the recusal issue can be inserted into a previously appealed final order. Why the need for time travel? Because the recusal argument asserted here

[1] Mr. Dondero and Dugaboy are one and the same. He is Dugaboy's sole lifetime beneficiary and controls every aspect of its existence, management, and litigation. And in respect of the Rule 9019 Settlement Order ultimately at issue here, Dugaboy has stipulated that Mr. Dondero is Dugaboy's "agent for all purposes relating to [all litigation supposedly relating to the Rule 9019 Settlement Order] and Dugaboy's [denied Rule 60 Motion]." *In re Highland Cap. Mgmt., L.P.*, Case No. 19-34054-sgj11, Bankr. Dkt. No. 4678, at 10–11 (Bankr. N.D. Tex. June 15, 2026) (Odell, J.).

[2] The Highland bankruptcy case is virtually over. Highland and its related entities have all been dissolved and have commenced winding up their affairs or been cancelled as required by the confirmed plan of reorganization. (*See* Bankr. Dkt. Nos. 4709, 4710, & 4711.) There are no remaining adversary proceedings or contested matters pending in the Bankruptcy Court, with the exception of two motions to strike pending before Judge Odell, which concern only whether Dugaboy can include in the record on appeal materials that were never admitted into evidence. Those motions are set to be heard *tomorrow* on September 3, 2026.

arises under Section 455***(a)***, not Section 455***(b)***, and Section 455(a) recusal arguments ***are*** waivable where the party has "full disclosure on the record of the basis for disqualification." 28 U.S.C. § 455(e). Here, Dugaboy undoubtedly had such knowledge. Dugaboy has been intermittently litigating its recusal mandamus petition on precisely the same allegations ***since 2023***, culminating in this Court's April 16, 2025, decision rejecting that petition but including the "strong argument" dictum that Dugaboy (misleadingly) flogs in this appeal. Yet Dugaboy did not raise recusal in its June 9, 2025, objection to the settlement between Highland and HMIT (and related entities) (the "Rule 9019 Settlement"; Bankr. Dkt. No. 4216) or at the approval hearing. Dugaboy then appealed the final approval order (the "Rule 9019 Settlement Order"; Bankr. Dkt. No. 4297) on July 14, 2025, and Dugaboy did not list recusal in its August 11, 2025, "Statement of Issues" or in its "Amended Statement of Issues" filed the next day (Bankr. Dkt. Nos. 4365 & 4368). Rather, Appellant did not file the operative recusal motion here until August 15, 2025—more than a month after appealing the final Rule 9019 Settlement Order. Dugaboy chose not to press recusal during the 9019 settlement proceedings with full knowledge of the facts and circumstances of which it now complains. That is classic waiver.

In any event, this Circuit has repeatedly "recognized that a timeliness requirement applies to raising § 455(a) disqualification." *Travelers Ins. Co. v. Liljeberg Enters. Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994). Thus, regardless of whether Dugaboy is deemed to have formally waived recusal as an argument regarding the final Rule 9019 Settlement Order, Dugaboy was required—but failed—to raise a timely recusal objection. This Court should not create a new "reverse-merger" rule to save Dugaboy from its multiple failures to properly present the recusal argument in connection with the Rule 9019 Settlement.

What is more, the "reverse-merger" rule Dugaboy urges is unprecedented and unfounded. Dugaboy offers generalities about finality being viewed with "flexibility," but it cannot cite a single case—in this Circuit or any other—in which an interlocutory order such as this one (much less a recusal order) has been "reverse merged" into a *prior* final order that has been previously appealed. This case illustrates the folly of the rule Dugaboy urges, because the Bankruptcy Court never had an opportunity to address in the final order on appeal the highly consequential issue decided in the interlocutory order Dugaboy wishes to "reverse merge" into it. To put a finer point on it, Dugaboy wants the right to argue something like: "The

Bankruptcy Court erred in approving the Rule 9019 Settlement on recusal grounds, as Dugaboy would later argue for the first time more than a month after Dugaboy appealed the Rule 9019 Settlement Order." There may be some "flexibility" in defining finality, but courts do not indulge such metaphysical gymnastics.

Finally, if ever there were a case deserving of a special exception to the general rule, this is not it. Given the prodigiously litigious track record of Mr. Dondero and his controlled affiliates, one or more panel members are likely familiar with his history as a serial litigant, bad-faith claim filer, and adjudicated contemnor. *NexPoint Real Estate Partners, L.L.C. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, --- F.4th ----, 2026 WL 2357894, at *1–2 (5th Cir. Aug. 14, 2026).[3] When the initial bankruptcy proceedings did not go his way, he promised to "burn the place down." *NexPoint Adv., L.P., et al. v. Highland Cap. Mgmt., L.P.* (*In re Highland Cap. Mgmt., L.P.)*, 48 F.4th 419, 426 (5th Cir. 2022). In this unfortunate and limited respect, Mr. Dondero is very much a man of his word.[4]

---

[3] (citing *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 98 F.4th 170, 174–77 (5th Cir. 2024); *Dondero v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 105 F.4th 830, 834 (5th Cir. 2024)).

[4] Mr. Dondero even threatened Highland's new CEO in writing, "Be careful what you do, last warning." *Highland Cap. Mgmt. v. Dondero (In re Highland Cap. Mgmt., L.P.)*, 2021 WL 2326350, at *7 (Bankr. N.D. Tex. June 7, 2021).

A significant part of Mr. Dondero's arson campaign has been to impugn the integrity of a respected bankruptcy judge at every level of the federal judiciary, by prosecuting five recusal motions, several mandamus petitions, three appeals, two rehearing petitions in this Court, a petition for a writ of certiorari, and even a petition for rehearing of the denial of certiorari.[5] ***No judge*** has accepted Mr. Dondero's arguments in any procedural posture or under any standard of review. ***No judge*** has accepted Mr. Dondero's portrayal of the facts. ***No judge*** has embraced Mr. Dondero's tales of woe about this case because they are, like his false characterizations of the books and various other descriptions of this case, "preposterous."[6]

So why has Mr. Dondero continued to devote so much time and energy to an ill-fated recusal campaign, and why does he suddenly care so much about the arcane corner of appellate jurisdiction known as the merger

---

[5] This Court laid out the history of Dugaboy's appeals and mandamus petitions arising from Dugaboy's *five* attempts to disqualify Judge Jernigan in *Dondero v. Jernigan*, 2025 WL 1122466 (5th Cir. Apr. 16, 2025). Throughout years of proceedings in the Bankruptcy Court, the District Court, three times in this Court (not counting the Judicial Council's involvement), and a petition for a writ of certiorari (and a petition for rehearing of its denial), no court anywhere has ever found that Judge Jernigan had a duty to recuse.

[6] Oral Argument Recording, *In re Highland Cap. Mgmt., L.P.*, No. 23-10911 (5th Cir. Aug. 6, 2024), *available at* https://www.ca5.uscourts.gov/oral-argument-recordings?from=2024-08-06&to=2024-08-10 (panel member responding to counsel's description of Mr. Dondero's shifting and baseless reasons why he should not be required to pay back the Highland estate the tens of millions of dollars he borrowed before the bankruptcy, noting that "a lot of the detail is preposterous").

doctrine? The answer lies in the final sentence of the recusal motion Dugaboy filed in the Bankruptcy Court, which asserted that "the Court should vacate ***all*** of its orders and decisions in this case taken ***since the day the Court began writing its novels***." (Bankr. Dkt. No. 4372 at 6 (emphasis added).) That is, Dugaboy ultimately contends that recusal not only "reverse-merges" back into one prior final order (here, the final Rule 9019 Settlement Order) but also can somehow infect everything in this case back to 2019. Allowing Dugaboy to challenge the Rule 9019 Settlement Order on recusal grounds would be bad enough. Permitting even a first step toward Mr. Dondero's real goal of unwinding a successful reorganization of over a billion dollars in claims and six-plus years of litigation would be truly calamitous.

## COUNTERSTATEMENT OF THE CASE

This case's long procedural history is sufficiently well known to this Court that little is served by rehashing all of it here. Certain errors, omissions, and mischaracterizations in Dugaboy's brief, however, require correction or clarification. Some of these points are directly related to this appeal. Others go more broadly to the fantastical narrative Dugaboy seeks to spin, in which Mr. Dondero is the victim of a conspiracy at the hands of (among others) the original bankruptcy judge, the court-appointed independent advisors

managing the Highland estate, Highland's creditors, a person Mr. Dondero hand-picked to be the exclusive control person of a (purported) donor-advised fund (at least until the two men had a falling out), and the professionals engaged on this matter.

Despite claiming that "[t]he question in this appeal is not the merits of the bankruptcy judge declining to recuse" (Br. at 8), Dugaboy devotes much of its Opening Brief to mischaracterizing the facts and circumstances underlying that very issue. Perhaps most egregiously, Dugaboy seriously misrepresents this Court's Judicial Council statement regarding Chief Judge Jernigan. The Council did *not*, as Dugaboy claims, "resolve . . . judicial-misconduct complaints" against Judge Jernigan by "effecting" her recusal "through [the Council's] resolutions." (*Id.* at 7; *see also id.* at 8 n.1, 19, 30.) In fact, Chief Judge Elrod's order for the Judicial Council expressly stated that "[n]either the judge's recusal nor anything in [the Council's] order should be interpreted as an opinion or reflection on the merits of the judge's prior decision not to recuse." *E.g.*, *In re Compl. of Jud. Misconduct Under The Judicial Improvements Act of 2002,* Compl. No. 05-26-90042 (Jud. Council for the 5th

Cir. Dec. 29, 2025).[7] The Council dismissed the complaints; it "effected" nothing and ordered nothing. *Dondero v. Jernigan*, 2025 WL 1122466, at *4–7 (5th Cir. Apr. 16, 2025) ("Chief Judge Jernigan's adverse rulings alone—or even paired with negative comments about Dondero—are not sufficient to warrant recusal").

Dugaboy also mischaracterizes the novels on which its entire recusal theory rests. As a threshold matter, the novels are not part of the record on appeal; neither Dugaboy nor Mr. Dondero introduced the novels into evidence in this proceeding or any other. Indeed, even this Court's statement that "a strong argument could be made that [Judge Jernigan] had a duty to recuse" was based not on the novels themselves, but instead merely on "the three parallels cited by the Dondero Parties" in their filings. (*Id.* at *7 ("The texts of the novels are not in the record before us.").)

---

[7] Although nowhere mentioned in Dugaboy's brief, the complaints against Chief Judge Jernigan were orchestrated by Mr. Dondero. The complaints were apparently filed simultaneously, as they (conspicuously) bear sequential complaint numbers. And to anyone familiar with the Highland case, the Judicial Council's orders' descriptions of each complainant leaves no doubt that the filers were Mr. Dondero and his cadre of professional dependents. *See In re Compl. of Jud. Misconduct*, Compl. Nos. (i) 05-26-90041 ("former chief executive officer of a corporate bankruptcy debtor"); (ii) 05-26-90042 ("former in-house counsel" who "appeared as a witness" and filed a "stalking" claim against another former employee); (iii) 05-26-90043 ("former in-house counsel for a company" filed a claim that was dismissed); (iv) 05-26-90044 ("the President of a religious organization" that claims a corporate debtor "indirectly provides financial support" filed a claim that was concluded in part and dismissed in part); (v) 05-26-90045 (someone "involved in the hedge fund industry" filed a claim that was concluded in part and dismissed in part).

Nonetheless, Dugaboy asserts that a secondary character that first appears in the second of Judge Jernigan's novels is "difficult to distinguish" from Mr. Dondero, based on the criminal character's involvement in the hedge fund industry, the fund's involvement in certain asset classes, and the character's "charitable interests." (Br. at 6.)[8] Those purported similarities hardly support Dugaboy's hyperbolic claims.[9]

Similarly, Dugaboy claims that Chief Judge Jernigan "was abundantly aware" that Mr. Dondero's hedge fund previously used the "Ranger Capital brand," such that it cannot be a coincidence that a character

---

[8] From the selective excerpts Dugaboy put before the United States Supreme Court, here is what the second book actually says about the character's "charitable interests": "He also owned a villa overlooking Lake Como in Italy, an apartment in Paris in the Eighth District, on the Right Bank (a.k.a. 'VIII arrondissement' or huitieme) and a small, moated Norman country home near Lisieux, where he enjoyed boar hunting. **He played golf with celebrities and politicians. He gave to all the right charities.** He had young girlfriends everywhere and allegedly had a couple of illegitimate children whose existence and identity were closely guarded secrets." (Br. 12 (citing Pet. for Writ of Certiorari at 133a, *Dondero v. Jernigan*, No. 25-355 (Sept. 22, 2025) (cert. denied) (quoting *Hedging Death* at 87)) (emphasis added).) None of this description—of a purely fictional character—remotely resembles Mr. Dondero. Or, as this Court said, "The hedge fund manager character who the Dondero Parties believe is patterned on Dondero is an individual who fakes his own suicide after linking up with Mexican drug cartels—far from the real-life James Dondero." *Dondero*, 2025 WL 1122466 at *7.

[9] The supposedly similar character does not even appear in Chief Judge Jernigan's first novel, which Dugaboy takes pains to obscure. As to the second novel, Dugaboy claims that the fictitious "Judge Lassiter interacts with a hedge fund manager named Cade Graham," Mr. Dondero's purported doppelganger. (Br. at 12.) But in the actual book, the fictional Judge Lassiter never meets, communicates with, or takes any action whatsoever against the fictional Cade Graham. As this Court noted, Chief Judge Jernigan's "novels are fiction." *Dondero*, 2025 WL 1122466, at *7. And so is Dugaboy's (mis)characterization of them. *Falsus in uno, falsus in omnibus*.

in her second novel "runs a hedge fund named Ranger Capital." (Br. at 12 & n.4.) As support for this assertion, Dugaboy lists a string of record citations (*id.* at n.4) which are designed to mislead this Court into believing that Chief Judge Jernigan was aware of a dozen examples in which Mr. Dondero's fund was previously called "Ranger Capital." In reality, those citations are merely lines from lists of executory contracts referring to contractual ***counterparties*** of Highland (not Dondero, Highland, or an affiliate).[10] The only evidence actually in the record establishes Chief Judge Jernigan's *lack of knowledge* of the "Ranger Capital brand"; as she explained, she had "never once" heard that Highland was ever known as Ranger Asset Management and that the name "was never mentioned in the bankruptcy case," was "not in the Highland disclosure statement," and was not "in any of the numerous organizational charts that were presented to her in the last three years." (Bankr. Dkt. No. 3675 at 34.)

[10] Dugaboy's cites refer merely to a Highland contractual counterparty and appear to be the result of a simple term search across nearly a million pages on the Highland bankruptcy case docket. Two of the cites are references to a single line (duplicate) time entry from a professional fee application that reads "Review Ranger Asset Management LPA forwarded by DSI." There is simply no way anyone reading these isolated entries—even if they had managed to stumble across them—would understand them to be connected to Mr. Dondero in any way. Nor is there any plausible basis to suppose that Chief Judge Jernigan would have even seen these haystacks, much less plucked out these supposed needles and made the incredible leaps of logic Dugaboy posits as evidence that she was "abundantly aware" of something.

Dugaboy filed its fourth recusal motion in the Bankruptcy Court on March 3, 2023, arguing that the novels required Chief Judge Jernigan's recusal under Section 455(a). She denied the motion. Dugaboy then unsuccessfully sought mandamus relief in the District Court. Dugaboy's appeal of the District Court's denial of mandamus was filed on April 4, 2024, and it met the same fate. On April 16, 2025, this Court issued its decision granting rehearing but reaffirming the District Court order denying mandamus relief. After a detailed review and rejection of each of Dondero's alleged examples of actual bias, the Court stated:

> From the information we have in the record before us [which did not include the novels themselves], whether a reasonable reader and observer of these proceedings could question Chief Judge Jernigan's impartiality in this case is debatable. Due to the similarities between the characters in Chief Judge Jernigan's novel and the litigants currently before her court, a strong argument could be made that she had a duty to recuse. But, while some similarities between the books and the cases before Chief Judge Jernigan may raise cause for concern, the similarities are not close enough to find that the district court abused its discretion denying the petition.

*Dondero*, 2025 WL 1122466, at *7.

The Rule 9019 Settlement was executed and filed for approval on May 19, 2025, and Dugaboy filed its objection on June 9, 2025. Although Dugaboy now misreads the April 19, 2025, decision by this Court as some

sort of smoking gun compelling Judge Jernigan's recusal, Dugaboy's objection to the Rule 9019 Settlement did not assert recusal among its reasons for disputing approval. Nor did Dugaboy mention recusal at the June 25, 2025, hearing on the proposed settlement, in its motion to stay the June 30, 2025, Rule 9019 Settlement Order, or in its July 14, 2025, notice of appeal of that order.

Rather, Dugaboy chose to not raise recusal again until its Fifth Recusal Motion filed on August 15, 2025—more than a month *after* it had appealed the Rule 9019 Settlement Order, and nearly four months *after* the supposedly damning language from this Court that an argument *could* be made in favor of recusal. The Bankruptcy Court entered its interlocutory order denying Dugaboy's latest recusal motion on September 2, 2025 (the "Recusal Order"; Bankr. Dkt. No. 4379).

## SUMMARY OF ARGUMENT

Dugaboy asks this Court to not only inscribe a new legal doctrine, but also to throw out settled doctrines of waiver and forfeiture. And even if this Court were somehow inclined to explore such a path, there could not be a worse case in which to do so. Dugaboy and Mr. Dondero are, despite the false narrative spun in their briefing, about the least deserving characters

imaginable for relief from settled law and their own tactical errors and omissions. Chief Judge Jernigan voluntarily stepped aside from the Highland bankruptcy case nearly a year ago, and the case is now on the one-yard line. All that would be gained by adopting the unprecedented doctrine Dugaboy urges here is inviting re-litigation of nearly seven years of final adverse trial and appellate decisions.[11] And let there be no mistake: that is precisely what Dugaboy and Mr. Dondero intend. They staked that very position in the motion giving rise to this appeal.

The Court should affirm the District Court's dismissal of Dugaboy's appeal of the interlocutory order denying Dugaboy's ***fifth*** recusal motion.

## ARGUMENT

### I. Dugaboy's "Reverse-Merger" Rule Would Work An Improper End-Run Around Settled Waiver And Timeliness Rules Governing Recusal Motions Under 28 U.S.C. § 455(a).

Dugaboy's reasons for fervently pursuing this unprecedented "reverse-merger" rule is obvious: despite the supposedly "continuous duty" of Chief Judge Jernigan to recuse in the wake of this Court's April 2025 decision affirming the District Court's first denial of mandamus, Dugaboy decided *not*

[11] *See, e.g.*, *Acis Cap. Mgmt., L.P. v. Dondero,* 2026 WL 2075573, at *1 (5th Cir. July 17, 2026) (listing some, but not all, of the final orders in the Highland bankruptcy case).

to move for her recusal. Rather, it waited to see whether the next ruling went Dugaboy's way. It was not until August 15, 2025—more than six weeks after the ruling and a month after Dugaboy had appealed that final order—that Dugaboy filed its recusal motion. It now seeks to exploit that untimely recusal motion to undo the previously appealed Rule 9019 Settlement Order retroactively, but it is settled law that Section 455(a) does not permit such gamesmanship.

Dugaboy begins by asserting that "[b]y the terms of 28 U.S.C. § 455, recusal is non-waivable, much like subject-matter jurisdiction." (Br. at 24.) Not so. Whereas Section 455***(b)*** defines actual conflicts of interest that *cannot* be waived, Section 455***(a)*** defines the mere appearance of conflict and *can* be waived upon "full disclosure on the record of the basis for disqualification." 28 U.S.C. § 455(e). Dugaboy concedes as much—or at least it quotes Section 455(e)'s text (Br. at 24)—but never explains how Dugaboy somehow lacked "full disclosure" of the grounds for recusal.

Nor could it. Dugaboy complained about the books' contents to the District Court and to this Court for years. And it had in hand this Court's April 19, 2025, decision on which it now relies as supposed evidence that the Bankruptcy Court knew it had a "duty" to recuse. The notion that Dugaboy

lacked full information necessary to effect a waiver by the express terms of Section 455(e) is beyond belief. The Bankruptcy Court issued at least seven final orders between March 5, 2023 (when the Bankruptcy Court denied the first recusal motion connected to the novels) and June 30, 2025 (when the Bankruptcy Court approved the Rule 9019 Settlement), and Dugaboy was a party to three of those orders. (Bankr. Dkt. Nos. 3904, 3936, 4235.)[12] But Dugaboy did not seek to "merge" the Bankruptcy Court's interlocutory denial of recusal—and did not raise the novels at all—into any of these final orders. (Bankr. Dkt. Nos. 3676, 3766, 3904, 3936, 4038, 4069, 4235.) Instead, Dugaboy strategically withheld its recusal motion while it awaited a decision on its opposition to the Rule 9019 Settlement, which is precisely the kind of subterfuge and gamesmanship Section 455(a) does not permit.

Even if one suspends disbelief and assumes that Dugaboy's failure to raise recusal during the Rule 9019 settlement proceedings was due to inadvertence or malpractice, that is no excuse. It is settled law in this Circuit that "a timeliness requirement applies to raising § 455(a) disqualification." *Liljeberg*, 38 F.3d at 1410. Accordingly, "one seeking disqualification must do

[12] Dugaboy is the 70% member interest holder of HCRE Partners, LLC, which was a party to three additional final orders. (Bankr. Dkt. Nos. 3766, 4038, 4069.)

so at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification." *Id.* Dugaboy not only knew about the books when the Rule 9019 Settlement approval proceedings were underway—Mr. Dondero had been complaining about them for years by then—it also claims that this Court's April 2025 decision represented some clear statement that recusal was warranted. Yet Dugaboy failed to seek relief. That is a textbook failure to satisfy the timeliness requirement, which would be rendered a nullity if a "reverse-merger" rule were adopted as Dugaboy urges.

This Court's decision in *United States v. York*, 888 F.2d 1050 (1989), is particularly instructive of the role the timeliness rule plays in Section 455(a) recusal motions. That case involved "the so-called 'I-30' condominium matter," which had spawned a series of related civil and criminal actions. 888 F.2d at 1051. In one related civil case, *In re Faulkner*, a litigant sought to disqualify the district judge because his cousin was "an investor in the I-30 fiasco." *Id.* at 1052. The judge denied the recusal motion, but this Court granted mandamus relief and removed the judge from the *Faulkner* case. That same judge continued to preside over the *York* case, however, and "even though York was aware of possible grounds for recusal," he did not move to recuse the judge before trial. *Id.* at 1052. This Court held that York's failure to move for

recusal—notwithstanding his belief that the judge would have denied relief because he had initially denied recusal in *In re Faulkner*—was fatal: "York allowed the court to conduct a full trial, all the while knowing that he might seek to invalidate it. Therefore, we find his motion for a new trial [raising recusal] untimely." *Id.* at 1056. So too here. Dugaboy cannot lie in wait to see the results of the Rule 9019 Settlement approval hearing, file a new recusal motion to challenge an unfavorable result, and then "reverse merge" it into that previous final order.

## II. Dugaboy's "Reverse-Merger" Rule Is Unprecedented And Unfounded.

This Court and its sister Circuits have held time and again that an interlocutory order "merges" into a *subsequent* final order. Dugaboy cannot cite a single case to the contrary on remotely similar footing. That is reason enough to affirm the District Court's dismissal.

In support of its sweeping proposition, Dugaboy offers only generic platitudes and readily distinguishable cases. For example, Dugaboy states that "[t]he concept of what constitutes a 'final order' in bankruptcy court . . . is more capacious than for cases initiated in district court." (Br. at 25.) But not even Dugaboy suggests that there is any doubt here that the recusal order is

interlocutory, not final. So any "flexibility" that may exist does not encompass this case.

Similarly, Dugaboy opines that "recusal orders are different," and then suggests that reverse merger is somehow appropriate when merely "reminding a judge of what she should be doing without prompting: Constantly evaluating whether . . . she should continue to preside over a case." (*Id.* at 28.) Here again, though, that platitude offers Dugaboy no help because it does not begin to address the authorities (discussed above) establishing that litigants face both waiver and timeliness rules when seeking to bring Section 455(a) challenges. At least insofar as Section 455(a) is concerned, recusal isn't so different after all.

The precedent on which Dugaboy relies is equally transparent. Dugaboy cites *Meadaa v. K.A.P. Enterprises, L.L.C.*, 756 F.3d 875, 879–80 (5th Cir. 2014), as an example of this Court "[a]llowing an order postdating a final order to merge into it." (Br. at 28.) But that case involved an unsuccessful Rule 59 motion that merged into the prior final judgment; that is, the 59(e) motion challenged the very same final judgment and left it undisturbed. In that context, "[a]n order affirming a prior judgment"—*i.e.*, denial of the Rule 59 motion—is just as much an integral part of that judgment as the evidentiary

rulings that paved the way to the judgment." 756 F.3d at 880. Here, by contrast, the interlocutory recusal issue was not even raised as part of the Rule 9019 Settlement approval proceedings into which Dugaboy seeks to "reverse-merge," much less was it an "integral part" of those proceedings.[13]

Dugaboy also cites *Tax Ease Funding , L.P. v. Thompson (In re Kizzee-Jordan)*, 626 F.3d 239 (5th Cir. 2010), which involved an ad valorem tax dispute in a Chapter 13 bankruptcy case. The Bankruptcy Court had overruled a tax claimant's objection, but the District Court reversed on appeal. This Court then affirmed. Addressing appellate jurisdiction, this Court held that the bankruptcy court's order was final. Although the bankruptcy court did not confirm the plan, its ruling on the confirmation objection "was considered by all parties to be final on the claim at issue and left nothing more for the court to do." *Id.* at 242. Accordingly, this Court, too, regarded that order as final for purposes of appeal. Here, however, there is no question that the

[13] In fact, the only mention of recusal during the Rule 9019 Settlement approval hearing was by Chief Judge Jernigan, when she asked Highland's counsel about then-outstanding matters, with Highland's counsel confirming that the recusal matter had *concluded* and Dugaboy's counsel saying *nothing*. *In re Highland Cap. Mgmt., L.P.*, Case No. 19-34054-sgj, Hr'g Tr. pp. 16–17 (Bankr. N.D. Tex. June 25, 2025), Bankr. Dkt. No. 4296 (Jernigan, C.J.). In fact, ***Dugaboy did not even raise "recusal" as an issue on appeal***. (Bankr. Dkt. Nos. 4365 & 4368 (statement of issues on appeal, as amended).)

Recusal Order was interlocutory, not final. *Kizzee-Jordan* does not address or even mention merger, nor does it involve recusal.[14]

Dugaboy ultimately concedes, as it must, that the District Court was "generally correct" that "interlocutory orders merge into final orders only when the final appealable order *postdates* the interlocutory order in question." (Br. at 20 (emphasis added).)[15] Indeed, this Court has already repeatedly rejected any notion of "reverse merger," including quite recently. Just last year, the Court confirmed that "the general merger rule looks *backward* from the final judgment, encompassing all interlocutory orders." *Osborne v. Belton*, 131 F.4th 262, 267 (5th Cir. 2025) (emphasis added). Similarly, in *Armour v. Knowles*, 512 F.3d 147, 156 n.20 (5th Cir. 2007), this Court held that "an appeal from a final judgment sufficiently preserves all *prior orders*

---

[14] Dugaboy may read *Kizzee-Jordan* to suggest that the *subsequent* confirmation order supplied finality that the *prior* order lacked. Leaving aside that such a reading is wrong—the bankruptcy court in that case did not enter a confirmation order—the chronology of orders in that case is the exact *opposite* of the chronology in this case. Even by Dugaboy's mistaken reading, *Kizzee-Jordan* describes a *later* order curing the inability to appeal the *earlier* order. Dugaboy needs it the other way around: an *earlier* order (*i.e.*, the 9019 Settlement Order) conferring appealability to a *later* order (*i.e.*, the recusal order). *Kizzee-Jordan,* even misread, points in the wrong direction.

[15] Dugaboy mischaracterizes Fed. R. Bankr. P. 8003(a)(4), arguing that the rule "allow[s] litigants to appeal interlocutory orders when they 'merge' into *adjacent* final orders." (Br. at 20 (emphasis added).) But the rule never uses the word "adjacent," a word Dugaboy inserts to obscure the long-established principle that only *prior* orders merge into *subsequent* orders, not the other way around.

intertwined with the final judgment," while a post-judgment order "cannot be considered by this court unless the judgment or order disposing of it is properly noticed for appeal" because an appellant "cannot usually evince an intent to appeal an order that does not yet exist" (emphasis added); *see also Diece-Lisa Indus., Inc. v. Disney Enters., Inc.,* 943 F.3d 239, 247 (5th Cir. 2019) (confining merger rule to *prior* interlocutory orders); *Elebute v. Vill. Cap. & Inv., L.L.C. (In re Elebute)*, 127 F.4th 958, 959–60 (5th Cir. 2025) (same).

Dugaboy did not move again for Chief Judge Jernigan's recusal until more than six weeks *after* the Bankruptcy Court entered the Rule 9019 Settlement Order and more than a month *after* Dugaboy had appealed that order. The Rule 9019 Settlement Order could not "merge" with any of the four earlier orders denying recusal because Dugaboy had already (unsuccessfully) appealed all those previous recusal-related orders, including to this Court. *See generally Dondero,* 2025 WL 1122466, at *7. Instead, even after this Court had rejected all of Dugaboy's prior attempts to force Judge Jernigan's recusal, Dugaboy tried again, filing its *fifth* recusal motion only *after* the Bankruptcy

Court overruled Dugaboy's objections and entered the Rule 9019 Settlement Order.[16]

Dugaboy concedes that it will be able to have the merits of its fifth recusal motion (such that they are) addressed in another forthcoming appeal, without doing violence to the settled merger rules. "The bankruptcy judge's denial of the recusal motion will be addressed on appeal to another district court judge in the appeal of the subsequent final order setting Class 11 claim amounts. (Br. at 21 (citing *Dugaboy Inv. Tr. v. Highland Claimant Tr.*, No. 3:25-cv-02724-L (N.D. Tex.)).) Dugaboy may attempt to retreat to a position it has lost before: arguing that the Highland bankruptcy case is one continuous proceeding in which every ruling eventually merges into some ultimate final disposition. This Court has "long rejected" this "single judicial unit" conception of a bankruptcy case. *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)*, 212 F.3d 277, 282 (5th Cir. 2000); *see also ASARCO, Inc. v. Elliot Mgmgt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 599 (5th Cir. 2011). If that argument comes, the Court should summarily reject it.

[16] This latest time, Dugaboy did not repeat its previous errors of neglecting to move for leave to appeal an interlocutory order. Dugaboy *did* move for leave, which the District Court denied before dismissing the appeal for lack of appellate jurisdiction. Dugaboy did not appeal the District Court's denial of leave.

Ultimately, Dugaboy urges this Court to create an "exception to the general principle that looks to interlocutory orders occurred [*sic*] *before* a final order for merger." (Br. at 27 (emphasis in original).) Dugaboy would have this Court adopt this backward rule "only in the unique circumstances of an order denying recusal . . . because a bankruptcy judge who declines to recuse is making continuous and ongoing decisions each day to not recuse despite the statutory obligation to recuse *sua sponte*." (*Id.* at 28.) Considering the frequency with which Dugaboy attempts to force this Court to address the issue, the only thing unique here is that Dugaboy continues to ask this Court to grant relief that no judge in any of the scores of proceedings spawned by this case has seen fit to award.

## III. This Is A Particularly Poor Case In Which To Consider An Exception To Long-Settled Practice.

Even if this Court were inclined to consider Dugaboy's invitation to apply an "exception" to the long-standing merger rule, this is the worst imaginable case in which to do so.

In the unlikely event the Court is not familiar with Mr. Dondero's apparently inexhaustible appetite for frivolous litigation and appeals, we note this Court's observation that (as of 2024) "Dondero has earned at least two sanctions for his interference with Highland's bankruptcy." *NexPoint*, 2026

WL 2357894 at *1 (citing this Court's affirmations of contempt findings in both *Dondero v. Highland Cap. Mgmt. L.P.*, 105 F.4th 830 (5th Cir. 2024), and *Charitable DAF Fund, LP v. Highland Cap. Mgmt., L.P.*, 98 F.4th 170 (5th Cir. 2024)). The total number of unsuccessful appeals (including mandamus petitions, rehearing petitions, certiorari petitions, and the like) exceeds ***70***. This Court recently offered a *partial* list of Dondero's appeals in this and the *Acis Management* cases in a "string cite" spanning four single-spaced pages and including ***82 case citations***, comparing Dondero's litigation campaign to "refighting the Hundred Years' War." *Acis,* 2026 WL 2075573, at *1.

With respect to just the Rule 9019 Settlement at issue here, Mr. Dondero has objected to it, financed the objections of other parties, sought a stay, appealed, and brought collateral challenges to a dispute he has with the control person of the Rule 9019 Settlement counterparty in the Cayman Islands and in the Texas Business Court. When none of that bore fruit, he filed a Rule 60(b) reconsideration motion in the Bankruptcy Court in front of Judge Odell to challenge the Rule 9019 Settlement again, was given additional discovery and the benefit of a three-day evidentiary trial, but failed to prove his case. He then filed a Rule 59(e) motion seeking reconsideration of his Rule 60(b) motion, which was denied, and has appealed the orders denying

those motions as well. The notion that Mr. Dondero or his affiliated entities should be granted an unprecedented pathway to *expand* his litigation footprint is hard to fathom.

Just weeks ago, after expressing obvious exasperation and surprise during oral argument that counsel to one of Mr. Dondero's other controlled affiliates could advance her arguments with a straight face, this Court affirmed the Bankruptcy Court's determination that Mr. Dondero filed and prosecuted a proof of claim in the Highland bankruptcy case in bad faith warranting the imposition of more than $825,000 in compensatory sanctions. As this Court noted, it is the third time this Court has affirmed findings that Mr. Dondero acted in contempt of court or in bad faith.

Worse yet, Dugaboy and Mr. Dondero have made no secret of what they believe the "reverse-merger" rule should ultimately allow them to do. As Dugaboy acknowledged when moving for recusal in the Bankruptcy Court, their ultimate goal is to undo the entire Highland bankruptcy case—or, in Dugaboy's own words, "the Court should vacate all of its orders and decisions in this case taken since the day the Court began writing its novels." (Bankr. Dkt. 4372 at 6.) To even state such a breathtaking proposition is to refute it.

## CONCLUSION

The District Court's dismissal for lack of jurisdiction should be affirmed.

September 2, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Jordan A. Kroop (AZ Bar No. 018825)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
jkroop@pszjlaw.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Mark T. Stancil
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com

-and-

**HAYWARD PLLC**
*/s/ Zachery Z. Annable*
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Email: MHayward@HaywardFirm.com
ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P. and Highland Claimant Trust*

## CERTIFICATE OF COMPLIANCE WITH FRAP 32

1. This document complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, including footnotes and excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 6,291 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced serif typeface (Century) at 14-point type (12-point for footnotes).

*/s/ Zachery Z. Annable*
Zachery Z. Annable

## CERTIFICATE OF SERVICE

I certify that, on September 2, 2026, a copy of the foregoing brief was served electronically on all parties registered to receive electronic notice in this case via the Court's CM/ECF system.

*/s/ Zachery Z. Annable*
Zachery Z. Annable